The next case on the docket is Agenda No. 15, No. 128651. Carol Cleeton, etc., Appellant v. SIU Healthcare, Inc., et al, etc. Counsel for the Appellant, are you prepared to proceed? Yes, Your Honor. May it please the Court, Counsel. Good morning. My name is Timothy Shea. I am here on behalf of the Plaintiff, Carol Cleeton. As the Independent Administrator of Donny Cleeton, who has passed away, and is the subject of this case that we are here about today. So the issue, and I'm assuming why the Supreme Court decided to take this case, is the significance of Section 2-402 of the Illinois Code of Civil Procedure as it relates to Section 2-622 of the Medical Malpractice Act. We start off with what is the legislative purpose of 2-402 and what happens next if the Supreme Court upholds the lower court's decision elevating the evidence required to convert a physician to a defendant versus simply suing him or her. Counsel, in your opinion, how much evidence is necessary to establish probable cause under Section 2-402? If you look at the prior cases, Your Honor, and you can look at, I think the most important case is the Moscardini case. And the Moscardini case talks about its relationship between 2-402 and 2-622. And, in fact, I think they use the language that they are in pari materia, meaning that if you comply with the requirements of 2-622, ergo you comply with the requirements of 2-402 as the evidentiary basis. So what does 2-622 require? Well, we know we have to have a physician's statement. It doesn't have to be signed. It doesn't have to be under oath. And we have to have an attorney's affidavit indicating that he has consulted with this physician and there's a reasonable and meritorious case. So the Moscardini court talks about the interplay of the language between a meritorious, a reasonable and meritorious case versus probable cause. So if read together, the answer to your question is at a maximum, if you comply with 2-622, you comply with 2-402. At a minimum, there seems to be other cases that say you can have an inartfully drafted, unsigned, unverified report. You can even have in one case, which I referred to in my brief, you can have an RN issue the report. Now, an RN does not meet the standard as far as a 2-622 certificate of merit because an RN is not a physician. But in that particular case, there was a prior appellate decision where an RN simply authored the report and it was sufficient to meet the standard. I think we're talking about two different procedural positions or maybe two different amounts of evidence. You have, right at the beginning of the case, an expert giving an opinion. And then later in the situation we have now where there's been literally discovery. There's been evidence that's been deduced. Shouldn't that make a difference between how the two sections are applied? Well, if you look at the case law that has interpreted the level of evidence required, we learn a couple things. First of all, we have an extension of only six months. So if you look at the practicality of the situation, what is accomplished in six months? If you're lucky, you have an exchange of some interrogatories and a request to produce. And if you're real lucky, you have a series of depositions of people that were in the operating room or partake in the treatment of the patient. So we don't have much there. We don't even reach a point where we have disclosures. I'm not sure I understand when you say there's not much here. This doctor was deposed, correct? Yes, this doctor was deposed. So there's evidence from him that was elicited in an adversarial way through discovery. Absolutely. So that's a pretty substantial amount of evidence versus the opinion of one expert. I think they're different. Sure, they're different. But the case law, if we're going to adhere to the prior case law, we have a low threshold. Nevertheless, we may not say it's the same as filing the lawsuit, because certainly if I would have filed the lawsuit with my Certificate of Merit and my affidavit that I attach as exhibits to my motion for leave, we wouldn't be here today because my Certificate of Merit was sufficient. So what was accomplished, or what does the court do with the fact that there's an extension of six months and discovery? Do we elevate the level of proof that's required? Let me ask you this in terms of standards. Sure. The legislature used the term probable cause. Yes. What does that mean? Well, it was defined as a ordinary and reasonable person. There's a long list of what was said there, but it does not require. Well, it's more than a suspicion, correct? Yes. Okay. Yes, it's more than a suspicion. Based on the facts, a reasonable person would believe certain things, correct? Yes, right. But what it doesn't say is it doesn't say you have to establish a prima facie case. You don't have to do that. So more than a suspicion, obviously probable cause is used in criminal cases all the time, and we have lots of definitions of what that means. So more than suspicion, probable cause, but not prima facie. Yes. And certainly not preponderance of the evidence. Yes, and we can go even further. We can say that it doesn't have to rise to the level to defeat a summary judgment because we have a case that says that. So we have a lower threshold. Approximate cause does mean you have to have some evidence, and the evidence that the courts have said in the before hasn't really been a lot. There have been certificates of merit. There have not been certificates of merit that would be sufficient under 2-622. How does the trial court go about making this determination? The trial court has got to read all of the depositions, correct? Sure, sure. The trial court is a gatekeeper. Now, what the trial court did in our particular case is the court said that it can and must resolve the conflict in reaching its decision. So what the court did in our particular case is it replaced the jury, which is a fact finder, and the court herself became the fact finder. So the court resolved conflicts, although we're on a de novo review and there was no testimony taken. What the court ultimately did is say, I believe Dr. Bequer. I don't believe the contents of the certificate of merit by Dr. Minori. That's what happened here. So what we did is we went past what is required for a summary judgment motion, because the summary judgment motion, you would have to find no evidence whatsoever in favor of the nonmoving party in order to grant a summary judgment motion. So not only did she rise above a summary judgment motion, but in essence, she conducted a bench trial on this issue. And there's something else that's very important that's troubling to me in this particular case is she made a finding that Donnie did not suffer from Baclofen Withdrawal Syndrome. Let's think of the significance of that. If Donnie's, there is a procedure of a refill of the Baclofen pump. We know from the post-autopsy testing that the catheter was punctured. When the catheter is punctured, the Baclofen then does not reach its intended source. That is the subject of our case, that there were signs and symptoms compatible with Baclofen Withdrawal Syndrome. So if the judge says, I don't believe that Donnie suffered from Baclofen Withdrawal Syndrome, and therefore Dr. Bequer does not convert from a respondent discovery to a defendant, not only does it have that implication, but it also has the implication that Donnie did not suffer the injury. It creates a collateral estoppel effect on an issue of fact. And that's what happened here. Issues of fact were determined by the court. In spite of the fact that the directives from the appellate courts in the past have said, you are not the fact finder, you're the gatekeeper. That's what the role of the judge is, the trial court judge, is in this particular case. So if we look at what she did, we know that requiring the plaintiff to prevent substantially more evidence to convert a respondent in discovery to a defendant than to name him in her initial complaint will not only thwart the legislative intent of preventing the filing of frivolous lawsuits against potentially liable doctors, but will gut Section 2-402, rendering it an unused and unusable statute. Because what's going to happen if the Supreme Court affirms the Fourth District decision is that Section 2-402 is meaningless. Because we know if you affirm the Fourth District decision, and we talk about the level of proof necessary, we have elevated the level of proof. So I filed a Certificate of Merit, I filed additional counts against Dr. Becker, and I filed my affidavit. Nobody attacked my Certificate of Merit as qualifying under Section 2-602. It had all the necessary elements that were contained therein. Ergo, I could have filed and included Dr. Becker as a defendant, and we would never meet today. But because I named him as a respondent in discovery, we went through a different process which was intended to protect doctors. That's the purpose. In fact, she doesn't want me to lose, if you really think about it. If you really think about the intention of this particular statute, if I lose, 2-402 is a meaningless statute. As far as the Illinois Code of Civil Procedure, it won't be used. Because plaintiff's attorneys will hearken the ruling and will, at this point in time, go back to the old Wild West when everybody was named as a defendant, and let's clean it up later. So what does that accomplish? It accomplishes nothing for the physicians. If you roll in favor of the record. Counsel, let me ask you a question. Yes. Practically and currently speaking, with respect to the other defendants that you named at the beginning, did you include the level of detail that the trial judge was asking for with respect to Dr. Becker? Well, I never got to that point because nobody ever attacked the certificates of merit. Okay. So I never, that issue never came up. Similar to the fact that this So maybe I should frame my question a little differently. Your certificates of merit with respect to the other named defendants basically tracked what you filed for Dr. Becker. Yes, yes. There's a theme. Something happened when the baclofen was being refilled. What happened was they missed the reservoir and they went poking around. I understand that. I was just trying to get a difference between the certificates of merit that you filed for the defendants that were named initially. Was it any different from what you were trying to file for Dr. Becker when you were converting him from a respondent in discovery to a defendant? They were not the same certificates of merit because obviously Dr. Becker plays a different role than some of the other defendants. Dr. Becker is the critical care specialist who treated Donnie when he was brought from the general floor or the intermediate floor to the intensive care unit when things started really going south for Donnie. So Dr. Becker was the captain of the ship in the intensive care unit. His role was different than the two ladies that put the baclofen, attempted to inject the baclofen, and was different from the neurologist, Dr. Al Sawalk, who was part of the neurology clinic who managed the baclofen pump of Donnie. Dr. Becker came later in the process, and his role was different, sequentially different, because he came later, a little bit after 10 o'clock, and he was involved in the care and treatment of Donnie. So I hope I answered your question. Yes, you did. So as I go back to the legislative purpose, we are going to have everybody named as defendants, which will increase the cost of medical malpractice litigation. It will create more of a logjam for the courts. It will increase the cost of health care. And it will not only that, it will subject plaintiff's attorneys to potential risk of Rule 137 because they will be required to sue doctors at or near the expiration. Counsel, let me ask you another question. In Dr. Becker's deposition, did he admit that his failure to treat and diagnose had anything to do with Mr. Cleeton's death? No. Dr. Becker says he believes it was sepsis. The only treatment that Donnie received, and ironically, sepsis can appear, or I should say, Baclofen Withdrawal Syndrome can appear similar to sepsis. It is a condition where your body becomes dependent upon this baclofen, and once you stop having the baclofen, which is what the breach of the catheter did, it didn't reach its intended source, then there is a series of symptoms that occur thereafter, and one of them is similar to the appearance of sepsis. So what Dr. Becker did agree with is that it was amongst his differential diagnoses, but he stuck with sepsis. So he didn't treat Baclofen Withdrawal Syndrome until 2.09 p.m., which he admitted was too late, if it would have been Baclofen Withdrawal Syndrome, to save Donnie's life. And the gold standard treatment for somebody that suffers from Baclofen Withdrawal Syndrome is an intrathecal injection to bring that person back from the withdrawal symptoms. Let's go back to what happened, not in the hospital, but in the trial court. The court had before it, the certificate of merit, it had before it all of the depositions of the doctor, correct? Yes. And the court looked at both and said that he objected to the motion to convert because he, at a legislative discovery, refuted the assumptions and conclusions of the expert in the certificate of merit. And in response, plaintiff asserted that the standard of care set forth by the expert was broader than the emergency procedure documents that were presented to the trial court. That's kind of where we were? Yes. That's what the court had in front of it, right? And the court made a finding that the emergency procedure documents that were tended to it by the plaintiff did not set forth a standard of care, correct? Correct. And then went on and said that even if it did set forth a standard of care, the evidence did not support the basis that the expert relied on. So that's what we're looking at. I'm sorry to move from the hospital to the courtroom, but that's what we're looking at. Sure. What did these documents that the court had in front of it, was the court correct in saying that after reviewing the deposition, reviewing the documents presented to it by the plaintiff, that it found that the plaintiff had failed in its presentation? Correct? Sure. Let me address that. In the Certificate of Merit, there were three statements made by Dr. Minori on the deviations from the standard of care. The one that the court latched on was the Medtronic emergency procedures document, which did not make its way to Dr. Bakir until after the death of Donnie. That was the salient fact that they grasped and held on to. The problem with that argument, before I go to the more important arguments, is that Dr. Bakir on page 19 of his discovery deposition indicated that he was familiar with what was contained in the contents of this Medtronic emergency procedures because the allegation by Dr. Minori was consistent with the Medtronic emergency procedures. So let's get past this and let's go to the heart of it. There were two other allegations that Dr. Minori made that were deviations from the standard of care. The first allegation was that Dr. Bakir failed to timely diagnose a baclofen withdrawal syndrome. And as you asked earlier, we go back to Did he ever think it was something other than sepsis? No. He stuck with sepsis and he will stick with sepsis until his dying day. So the second So what did the certificate of merit say about that issue? The certificate of merit said that Isn't the issue here, the certificate of merit said one thing, the doctor's testimony said something else. Isn't that where the problem is? Well, the certificate of merit says three things. It says Medtronic procedure. It says also it talks about the failure to timely diagnose and more importantly failure to timely render the treatment. So there are three deviations from the standard of care. Three, they were held on, the court held on to one. So there's a disagreement between the court. So what the court did is it looked at Minori and said I don't agree with your certificate of merit. I agree with Bakir. Therefore, she became the fact finder. Thank you very much. Okay. Am I done? Yes. Okay. You're brilliant. I know a red light when I see one. Good morning. May it please the court, counsel. My name is Ann Barron. I'm here on behalf of Dr. Muhammad Bakir, who was the respondent in discovery in this case. And I think the respondent discovery statute was adopted in the 1970s, and I actually think this is the first case before this court where the respondent discovery statute has actually been at issue. There's a whole line of approximately 40 years of appellate court opinions discussing the respondent discovery statute. The statute itself, as you recognize, says conversion can occur when the plaintiff, the movement, and it's the burden of the plaintiff, provides evidence that discloses the existence of probable cause for an action against the respondent. So the first case that came up was a case called Torley, and that case discussed more of the procedure than the actual standard. But what I think is important from that case is that case said it would be equally absurd to construe the provision as permitting the plaintiff to make a unilateral judgment that such probable cause does indeed exist. The statute must reasonably... The plaintiff had named Dr. Baquer as a defendant at the beginning, using the very same affidavit that Dr. Menor gave in this case, gave later to convert him. Would we be here? Would you be here? Well, we would have evaluated that affidavit at that time in light of what we knew at that time and perhaps moved to dismiss pursuant to 735 ILCS 5-2615, which means what? Challenging the sufficiency of the affidavit. So we could have gone and challenged at the outset the sufficiency of the affidavit. But that would be true for all the other defendants as well, right? Correct. Okay. But, I mean, that's what happens in a medical malpractice case, right? It does if you believe the affidavit or the certificate of merit is insufficient. Okay. So going back to Torley, what the court said there in its second statement was the statute must reasonably be read as requiring the court to which the motion is addressed to make that finding. So it is the court's authority to make that finding, not merely the plaintiff coming forward and said, I submitted a 2622. That's sufficient. So then a few years later, the court in Engle, which is a fourth district appellate court, was really the first court to say, what does this statute mean? What does that standard really mean? And that's, the court said, a person of ordinary caution and prudence would believe or entertain an honest and strong suspicion, just not any suspicion, but an honest and strong suspicion, that the negligence of the respondent in discovery was approximate cause of the factual and legal cause of the plaintiff's injury. And that's what our trial court did here. She looked at that. She looked at the other cases. And she made an assessment on the materials presented to her. So what was presented to her? The case was filed in February of 2019. Dr. Bakir was named as a respondent, as well as other defendants. Plaintiffs subsequently got an extension past the six months to move to convert Dr. Bakir from a respondent in discovery to a defendant. At the time plaintiff moved in November of 2019, plaintiffs submitted the proposed amended complaint, an attorney's affidavit, and the certificate from Dr. Minori. That was it, nothing else. Plaintiff then was able, Dr. Bakir had not been deposed at that time, and Dr. Minori's certificate actually said, I reserve the right to change, modify these opinions after Dr. Bakir is deposed. The case law holds that a plaintiff is not required to present all the evidence at the time the motion's filed. The plaintiff can later supplement it. So actually about 18 months went on from November 2019, outside of the statute of limitations, where plaintiff was allowed to take discovery, to do depositions, and to submit more materials. In that interim period, Dr. Bakir objected, and Dr. Bakir said, here's my deposition, Your Honor, here's the medical records, here's the deposition of Dr. Al Sawaf, the neurologist. Plaintiff then responded and said, here's the medical records, and we went forward. And eventually the court held the hearing, and the court considered all of the evidence that was before it. And why is that important? If you go to the Moscardini case, which counsel referenced, that case initially involved the trial court rejecting an unsigned, unverified, undated certificate or letter from a physician. When the case went up on appeal, the court said, we don't see why you shouldn't have considered that as one of the pieces of evidence. And we actually think that the depositions that were submitted as well may corroborate that affidavit. Counsel, let me ask you another question. What is the underlying purpose of the respondent in discovery statute that allows a plaintiff to convert someone later? I think it has several purposes, Your Honor. One is the initial intent of the legislature back in the 1970s when it said, we're worried about the cost of medical malpractice cases, on the cost of insurance. We might be, plaintiff might be naming everybody because we have a two-year statute of limitations, and they're concerned about that, so let's create this statutory program that allows the plaintiff to name a respondent in discovery. But it also gives the plaintiffs added benefits. It allows them to potentially extend the statute of limitations. Here, the motion to convert was filed after the statute of limitations. So in reality, in many of these cases, we see a complaint filed right before the running of the statute of limitations. That's pretty regular. So here, a plaintiff gets an added burden of being able to extend the statute of limitations. Plaintiff also gets another benefit, the right to discovery without, or the right to unfettered discovery, including of the respondent in discovery. The respondent in discovery must comply with any request for discovery, including a deposition. So the plaintiff gets to be at the forefront of the litigation. Many times, as you may know, these cases proceed by... But wouldn't that have all happened if he had just been named as a defendant initially? You said you would have filed a 215 motion, and all of what you said is a benefit of this statute to the plaintiff. What would have happened then? Well, the deposition might not have gone forward. We, defense counsel, often take the position that until our motion to dismiss is resolved, we're not producing our client for a deposition. And so we often take the position, plaintiff, we get to depose you first. And that's not the case in a 2402. It gives the plaintiff the right to undertake discovery, to serve discovery on the respondents in discovery, to take their depositions. So that, in our opinion, is... But isn't part of the reason is to exclude people who really don't belong in the lawsuit? Once you do some discovery, you figure out who belongs in the suit and who doesn't. Isn't that part of the reason for the respondent in discovery statute? That is, Your Honor. And I was trying to come up with a hypothetical that could explain that. And one of the situations might be, let's say, a code in an emergency room or a code in a hospital where the code sheet and the records are not clear of who was doing what at what point in time and who was involved. So if you would name all the people who are on the code sheet, they may not be defendants. I understand. I was just trying to get your opinion as to what you thought the purpose of the statute was. So along those same lines, what's the threshold once the plaintiff decides that, yeah, this person really breached the standard of care and I'm going to get a certificate? What's the threshold? Is it really a high standard? Is it, you know, a minimal standard? What is it? Your opponent seems to think it's not a really high standard. What do you say? Well, the case law has said it's a low threshold, but our position is a low threshold doesn't mean no threshold, and the court must still act as gatekeeper and evaluate all the evidence that is before the court. When you say no threshold, what do you mean? For example, the plaintiff is just saying, I submitted this and it's sufficient. I mean, some people may not challenge the motion to convert, but when you do challenge the motion to convert, the plaintiff has to come forward with some evidence of the elements of the case, and here in a medical malpractice case that's the standard of care, the breach of the standard of care, or negligent or unskillful act, and some type of proximate cause or some type of cause, both legally and factually, giving rise to the plaintiff's damages. So you have to come forward with the elements of the cause of action. What's the role of the trial judge? So the trial judge has both the certificate of merit and all of the depositions and other evidence that's been developed during this time. Can the trial judge reject the certificate of merit if it's in conflict with the deposition? How is that supposed to work? What standard is it? One of my problems here is there's a lot of talk about what standard and I'm not sure what it means, but the argument here is that there was a credibility decision that the trial court was making that basically made this a motion for summary judgment. So what does the trial court do if the certificate of merit says one thing and the deposition says something else? Well, I think that's... In that case, there may be an actual evidentiary hearing where people testify and they're allowed to assess the credibility of those who are testifying. In this case, if you look at it, the trial court found there was no evidence of what the standard of care was, and the appellate court agreed. So I think the trial court looks at all the evidence in front of it. If you look at that Mascardidi case, the appellate court said, that unsigned and verified letter. But what the trial court did was say, we are remanding this, so you can consider all the evidence and whether or not it's consistent. And if it's not... But you're not really answering my question. What is this inconsistency between the certificate of merit and the deposition? Well, I think... So the argument is made here, what the trial court did said, I believe what was said in the deposition and I'm rejecting what happened in the certificate of merit, what was said in the affidavit. Can the trial court do that? I believe so, yes. Because the trial court has all the evidence before her or him, and it is the plaintiff's burden of proof. And so in that case, the court could find that the plaintiff has not met their burden of proof. Burden of proof... In accordance with the statute. Whatever the standard is. Correct. Going back to Mascardini, just very quickly, the court said, trial court, this is coming back to you to review all the evidence. And it's our position in this case that there was no evidence about the standard of care. And that's what the appellate court found too. The Medtronic medical emergency procedures, even though they're not really referenced in the appellate court or the briefing before this court, Dr. Bakir never received those. So how those could form some kind of standard of care, we're not sure. Dr. Bakir said, yes, I'm familiar with the... Would it matter if, as your opponent says, Dr. Bakir testified in his deposition that he was familiar with the Medtronic emergency procedures? Thank you for that question, Your Honor. I was just going there. Being familiar with a syndrome, I don't think he said he was familiar with the procedures. I think he said he was familiar with back-lymphatic withdrawal syndrome. That's not the same as setting forth the standard of care. And if you look at the Engel case, the Engel case is a really good example of how... No, wait a minute. It's not Dr. Bakir who was asked about the standard of care. It's the plaintiff's expert that's saying the standard of care was breached. And Dr. Bakir's testimony is that he understood the Medtronic emergency procedures. So if you take those two things together, does that suggest that Dr. Bakir knew the standard of care but he breached it? I don't believe so, Your Honor, because there's no testimony of what the standard of care actually is. There's no evidence of what the standard of care actually is. And like I said, being familiar with the syndrome, I don't believe Dr. Bakir said he was familiar with the actual procedures. But being familiar with something is not setting forth the standard of care. And I was going to mention Engel because I think that's a good case on... We're talking about a physician who's in charge of an ICU here. So, I mean, I think saying being familiar with something kind of sounds a little bit casual. But I would think that talking about a physician who is in charge of an ICU testifying that he's familiar with this particular syndrome, that's got to count for something, don't you think?  So, going through his deposition testimony, he relied upon other people who are more familiar with Baclofen withdrawal syndrome. He contacted the Medtronic representative. He spoke with the neurologist on staff. He also called neurosurgery about administering Baclofen because I think if you look at Dr. Bakir's deposition testimony, he also said, if I were to administer, or I know enough that if I were to administer Baclofen and this person was not in Baclofen withdrawal, that could have serious consequences. Counsel, is it your position that a respondent in discovery proceeding can become a summary judgment proceeding? No, Your Honor, I don't... I mean, it could, depending on what the submission is, but that's not the initial intent of the proceeding. The intent is that the plaintiff meet their burden of proof on showing probable cause exists for conversion. But it's presumption, correct? Well, courts have... They're not supposed to present their entire case. Right, it's not a trial on the merits. Right. Right, so it's initial... What's the standard of review? That's a very good question, Your Honor. Here, the appellate court... I'd say the cases have been all over the place, and whether it's abuse of discretion or de novo. Here, the appellate court found it was de novo and limited their discussion to the... standard of care. But if a court actually goes through and assesses the credibility, it can be an abuse of discretion. So in criminal cases when we talk about probable cause... Correct. ...and we talk about standard of review, we talk about this kind of mixed standard where we look at de novo in terms of the law, and then it's a mixed question of law and fact. De novo in terms of the law, and then we look at whether or not the evidence that was presented rises to that standard. Is that helpful? I think it is. I think here, de novo, you can look and review what the law is and what the case law that's been developed over the past 40 years roughly on the respondent discovery statute. But when you get into what the evidence is, that is abuse of discretion. And I kind of liken that to... Or manifest way. I'm sorry, what? Or manifest way. It could be a manifest way. I kind of liken this to a form of nonconvenience issue where you know what the law is, the law's been developed, and then the court hears the evidence and whether the court acted the way it did is often an abuse of discretion, whether the court abused its discretion in considering the evidence. And if I could just very briefly address the Engle case, because I think that is instructive. And that case was decided back in 1986. So plaintiffs have known Engle's out there and tell you how to do it. So in Engle, that involves some radiologists and their review of x-rays. And the plaintiff moved to convert and submitted the depositions of the radiologists, the x-ray reports, and a certificate from or something from some other physicians. And the court really looked at that submission in depth and said, we find that the plaintiff here has met the probable cause standard. Because here in Engle, the physicians themselves, the radiologists, actually testified about what the standard of care is. And they said and testified that the standard of care required them to report anything to a treating physician which was significant about an x-ray. And the allegation was, you didn't report something significant about this x-ray to the treating physician. So the appellate court said, we think that standard has been met. But they looked at the totality of the matter and stressed looking at the totality of the matter before them. And in that case, plaintiff had actually presented evidence of the standard of care on roughly each of the elements of a cause of action for medical malpractice through the respondent's own deposition testimony. So that case has shown counsel how to do this. So I don't think this is an end-of-the-world situation, as counsel has implied. People are still going to use the respondent discovery statute. In this case, Ms. Cleeton, the plaintiff, had 18 months to present whatever evidence she wanted to the trial court. That's almost like a full-blown lawsuit in some cases. Before the court heard a hearing. And here at the trial court, if you look at her opinion, it's very well-reasoned about what she did and what was in front of her. So we go back to, plaintiff just cannot say by themselves, I submitted enough evidence. The court must act as a gatekeeper. Any further questions? Thank you. I think counsel needs to re-read the Engel decision. The radiologists that testified by deposition that were respondents in discovery did not say they deviated from the standard of care. The proof of the deviation from the standard of care  The review of the medical records. Testimony that the radiologists made in their depositions. And also a certificate of merit by a non-radiologist who reviewed the medical records and x-rays. And the Engel court said that was sufficient to meet the threshold, your honors, to move to the next step of being converted to a defendant. I also, I want to clarify something about Dr. Becure, because I don't want to be misleading with respect to the Medtronic procedures. Dr. Becure did not review the Medtronic emergency procedures. Dr. Becure did not have them or ever had reviewed them. What Dr. Becure did, starting on page 19 of his deposition, is thoroughly discuss the contents of the Medtronic emergency procedures with respect to the knowledge that he had, how Baclofen Withdrawal Syndrome manifested itself, symptomatology and clinically. So even though he did not have that document, he was well-versed, at least for his deposition, he was well-versed on Baclofen Withdrawal Syndrome. And as a critical care specialist in the intensive care unit, he was responsible for the care and treatment of young Donny Clayton while he presented very ill and on the cusp of dying because he had not timely received, which is an allegation that we made of a deviation from the standard of care, he did not timely receive that intrathecal injection. That was one of the three ways. Failure to diagnose, failure to treat, and failure to comply with the contents of the Medtronic emergency procedures. Either one of those three are sufficient to carry the day and sufficient to meet the standard of care. May I ask a question that I asked your opponent? What is the standard of review of the trial court's probable cause determination? It's a great question. And counsel was befuddled, and quite frankly, as I read it at first glance, I thought maybe it was a manifest way to be evidence of use of discretion. But the case law seems to indicate that if there is no testimony, which there was no live testimony, she had the documents. She had the deposition. She had the deposition. She had the deposition. And she had the certificate of merit. So she has evidence in front of her. So on one hand, we don't have live testimony, so we don't have that abuse of discretion. But on the other hand, she weighs the evidence of the certificate of merit versus the discovery deposition. So it may be a hybrid, as you suggested, because quite frankly it combines some law with some fact. Now what counsel said is very interesting and is very telling is what she's asking you to do. She is asking you to change 40 years of appellate precedent to elevate the role of the trial court to not only be a gatekeeper, but to be a finder of fact. Because you asked her explicitly, does the trial court have the ability to make determinations of credibility in her assessment? And she said, yes, that is contrary to 40 years of law and the statute. So you have the decision, Your Honors, to make whether you want to change 40 years of precedent and elevate the standard of Section 2-402 and the free-for-all that will follow with doctors being sued en masse because the standard is higher in 2-402 than it is 2-622. And I want to say another thing. Not one time she could say we would file a 2-615 motion if I sued, but not at any point in time when it's more telling is what she didn't do. Nobody from the respondent and discovery, none of the attorneys, challenged the certificate of merit as it would apply to 2-622 or anything else. This is an unchallenged certificate of merit. If I sue Becker, I'm not here. But I'm here because the trial court became the fact finder and the appellate court upheld it. Was there language in the affidavit, in the certificate of merit, that the expert's opinion might be modified in view of the deposition? Well, it said what everything else. Yes, yes, yes. But what does the trial judge do? The certificate of merit says here's my opinion on all of these issues and all the elements, and then it's modified to say, but it could change depending on the deposition. Then the trial court has in front of it the deposition. How is the trial court to use the deposition in light of that statement in the affidavit? Well, I guess if Dr. Minori changes his opinion, I mean, two people can read, it's like the Japanese movie Ra. Multiple people can see the same thing and have four different interpretations of it. Dr. Becker can look at the medical record and say, I believe it was sepsis. Dr. Minori looks at the medical record and says, I believe it is baclofen withdrawal syndrome. But Keurig didn't look at anything other than the record. That was what his testimony was. So we have two different people looking at the same thing and coming up with two different conclusions. Baclofen withdrawal syndrome or sepsis. And so what the court did is it made a finding of fact that went above the standard for a summary judgment because if it truly was a summary judgment, and I've never heard anything that a 2402 objection can be converted to a motion for summary judgment, it's the first I've ever heard of this. It's a novel argument, but the issue is if it was a summary judgment, the court would still have to find in favor of the plaintiff because there is evidence supportive of baclofen withdrawal syndrome. So the court went one step further. She elevated her role to that as a fact finder. And if anybody has any other questions? Thank you all. Thank you very much. This case, agenda number 15-128651, Carol Cleeton v. S.I.U., will be taken under advisement. Thank you both for your arguments.